UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RANDALL KLING

CIVIL ACTION

VERSUS

NO. 19-671-JWD-EWD

TROY HEBERT, ET AL.

## RULING AND ORDER

Before the Court is a Motion to Dismiss by Defendant, Juana Marine-Lombard ("Lombard") in her official capacity as the current Commissioner of the Office of Alcohol and Tobacco Control ("ATC") of the Louisiana Department of Revenue ("LDR"). (Doc. 12). Plaintiff, Randall Kling ("Plaintiff" or "Kling"), opposes the motion. (Doc. 16). Lombard filed a reply. (Doc. 25). Also before the Court is a Motion to Dismiss by Defendant, Troy Hebert ("Hebert"). (Doc. 32). Plaintiff opposes the motion, (Doc. 36), to which Hebert replied, (Doc. 38). Oral argument is not necessary. After carefully considering the law, facts, and arguments of the parties, Lombard's Motion to Dismiss is granted pursuant to Rule 12(b)(1), and Hebert's Motion to Dismiss is granted pursuant to Rule 12(b)(6).

## I.   Relevant Factual and Procedural Background

### A.   Factual Allegations

For the purposes of a motion to dismiss, the Court must accept the following factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

Plaintiff filed a complaint against Hebert "for retaliation in violation of 42 U.S.C. § 1983, the First Amendment …, and the Due Process Clause of the Fourteenth Amendment". (Doc. 1 at 1). Plaintiff is a resident of Fort Bend County in Texas. Hebert served as the Commissioner of

the Office of Alcohol and Tobacco Control and is sued in his personal capacity. (*Id*.). Lombard is a named defendant in her official capacity as the successor Commissioner of the Office of Alcohol and Tobacco Control. (*Id*. at 2).

Prior to March 30, 2011, Plaintiff served as the "Captain in charge of the ATC Licensing and Certification Division."[1] (*Id*.). On March 10, 2011, Plaintiff and "eleven (11) other Command Staff and employees of the ATC" submitted a complaint to Cynthia Bridges, then Secretary of the LDR, regarding "what they reasonably believed to be offensive and unlawful behavior on the part of ATC Commissioner … Hebert." (*Id*.). Plaintiff alleges that "matters of public concern" were addressed in the complaint, "which had adversely affected this law enforcement agency including, without limitation, hostile work environment, systematic discrimination, threats, intimidation, harassment, inefficiency, favoritism, violation of Civil Services rules, the mass exodus of highly qualified law enforcement officers with extensive careers and stellar job performance, and serious morale problems within the ATC." (*Id*.).

On March 16, 22, and 25, 2011, Plaintiff submitted additional complaints to Wanda "Dee" Everett, then Director of Human Resources for the LDR, regarding what Plaintiff "reasonably believed to be similar offensive and unlawful behavior on the part of ATC Commissioner … Hebert." (*Id*. at 3). Plaintiff claims that "Defendant"[2] terminated his employment on March 30, 2011, in "retaliation" for Plaintiff submitting the complaints against Hebert. (*Id*.). Plaintiff claims that the termination of his employment "was in retaliation for the exercise of [his] rights to free speech under the First and Fourteenth Amendment[s]." (*Id*.). Plaintiff cites the "temporal proximity" of his complaints to the termination, as well as the "direct evidence in which … Hebert

---

[1] Plaintiff refers to his former position as "Captain". Defendants refer to the former position as "Agent". Both parties are referring to the same position, and these terms are used interchangeably.

[2] Both Hebert, in his individual capacity, and Lombard, in her official capacity, are named Defendants in this matter. Based on the timing of the firing, Plaintiff seems to be referring to Hebert. (Doc. 1 at 3).

essentially admitted that he terminated [Plaintiff's] employment because [Plaintiff] presented the March 10, 2011, complaint to … Bridges," as the basis for his allegations of retaliatory termination of employment. (*Id*.).

In his Complaint, Plaintiff alleges a "cause of action" for "retaliation", for which "the Plaintiff has suffered past losses of wages." (*Id*. at 5). Plaintiff also asserts a claim of "qualified immunity",[3] averring that the "right to be free from retaliation for the exercise of First Amendment speech has been clearly established for decades and it was objectively unreasonable for … Hebert to violate this clearly established law." (*Id*.). Plaintiff also seeks punitive damages for Hebert's "willful and malicious" "acts of retaliation". (*Id*.).

In his "Prayer for Relief", Plaintiff seeks a judgment in his favor "with[in] the provisions of 42 U.S.C. § 1983": (A) "Declaring the rights of the parties and finding that the aforementioned conduct of … Hebert was and is violative of 42 U.S.C. § 1983, the First Amendment …, and the Due Process Clause of the Fourteenth Amendment"; (B) "Ordering … Lombard … to reinstate the Plaintiff to his former position"; (C) "Ordering the Defendant[4] to pay Plaintiff's past lost wages, punitive damages, and legal interest"; (D) "Ordering the Defendant to pay Plaintiff's reasonable attorney fees and litigation expenses in accordance with 42 U.S.C. § 1988 for this proceeding and the previous state court proceeding"; and (E) "Ordering such other and additional relief as this Court deems necessary or proper". (*Id*. at 6).

### B.    Procedural Background

Plaintiff filed suit against the "Louisiana Department of Revenue" in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on May 26, 2011. (*Id*. at 3).

---

[3] It is unclear from the Complaint whether Plaintiff pleads "qualified immunity" as a separate cause of action or as part of Plaintiff's "First Cause of Action", which appears to be the cause of action of "retaliation". There is no "Second" cause of action plead. (Doc. 1 at 5).
[4] It is unclear to whom "the Defendant" refers in (C) and (D).

3

Plaintiff "alleged the same cause of action which is asserted in the instant case." (*Id.*).  Plaintiff claimed that "the Louisiana Department of Revenue was vicariously liable for … Hebert's retaliation against [Plaintiff] and his termination of … employment … because Hebert was acting within the [course and scope] of his employment." (*Id.* at 4).

Plaintiff's original petition and amending petition in the state court proceeding assert claims against the LDR under Louisiana's Constitution.  (Doc. 12-2, 12-3).  Plaintiff does not assert any claims under federal law or the United States Constitution.

The state court suit was tried before a jury on November 27, 2017.  The jury rendered a verdict in favor of Plaintiff and against the LDR in the amount of $150,000.00 in compensatory damages and $243,045.00 in lost wages.  (Doc. 1 at 4).  The Department of Revenue appealed the judgment to the First Circuit Court of Appeals, which affirmed the jury verdict as to compensatory damages, but reversed the verdict as to lost wages, on July 18, 2019.  (*Id.*).  Plaintiff alleges that the appellate court ruled that the state district court "did not have subject matter jurisdiction to adjudicate the Plaintiff's state constitutional claims for lost wages in light of the fact that [Plaintiff] was a probationary state employee." (*Id.* at 5).

In his Complaint, which was filed on October 3, 2019, Plaintiff alleged that the state court suit was pending before the Louisiana Supreme Court.  (*Id.* at 4).  However, on November 5, 2019, the Louisiana Supreme Court denied Plaintiff's writ application, finalizing the judgment in the state court matter.  (Doc. 12-19).

## C.    The Present Motions

Defendants move this Court to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Lombard attaches eighteen (18) exhibits to her motion: the

petition from Plaintiff's state court proceeding, (Doc. 12-2); the amended petition from Plaintiff's state court proceeding, (Doc. 12-3); Plaintiff's trial testimony from the state court trial, (Doc. 12-4); a job description of Plaintiff's prior position, (Doc. 12-5); a memorandum of recommendation, (Doc. 12-6); the Declaration of Terri Cooke, (Doc. 12-7); the judgment from the state court proceeding, (Doc. 12-8); a revised judgment from the state court proceeding, (Doc. 12-9); an order from the state court proceeding, (Doc. 12-10); a second order from the state court proceeding, (Doc. 12-11); Plaintiff's answer to the appeal to the First Circuit Court of Appeals, (Doc. 12-12); Plaintiff's appeal brief, (Doc. 12-13); Defendant's reply brief, (Doc. 12-14); Plaintiff's application for partial rehearing, (Doc. 12-15); the First Circuit's denial of rehearing, (Doc. 12-16); Plaintiff's writ application to the Louisiana Supreme Court, (Doc. 12-17); Defendant's opposition to the writ application, (Doc. 12-18); and the denial of the writ application, (Doc. 12-19). Lombard argues that these attachments were submitted to address subject matter jurisdiction in accordance with Rule 12(b)(1), a "factual attack" challenging the existence of subject matter jurisdiction irrespective of the pleadings and considering matters outside the pleadings such as testimony and affidavits. (Doc. 12-1 at 8 (citing *Omega Hospital, LLC v. United Healthcare Services, Inc.*, 345 F.Supp.3d 712, 721 (M.D. La. 2018), citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also Smith v. United States*, No. 19-238, 2019 WL 5103805, at *2 (M.D. La. Oct. 11, 2019)). Lombard also argues that the Court may consider sources outside of the Complaint if the documents were incorporated into the Complaint by reference and/or are matters of which the Court may take judicial notice. (Doc. 12-1 at 10 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Plaintiff objects to the consideration of the exhibits because none of the exhibits submitted by Lombard relate to her sovereign immunity argument. Plaintiff concedes that the petition is central to his claims.  (Doc. 16 at 5).

Hebert attaches the following exhibits to his motion: the March 10, 2011, complaint letter, (Doc. 32-2); the March 16, 22, and 25, 2011, complaint letters, (Doc. 32-3); the petition filed in the state court proceeding, (Doc. 32-4); Hebert's appeal brief, (Doc. 32-5); Plaintiff's appeal brief, (Doc. 32-5); Plaintiff's trial testimony, (Doc. 32-6); the memorandum of law in support of Defendant's exception in the state court proceeding, (Doc. 32-8); the Judgment in the state court proceeding, (Doc. 32-9); and the ruling from the First Circuit Court of Appeals, (Doc. 32-10). Hebert argues that the Court may consider sources outside of the Complaint if the documents were incorporated into the Complaint by reference and/or are matters of which the Court may take judicial notice.  (Doc. 32-1 at 2, n. 1 and 2).

Plaintiff objects to the Court considering Docs. 32-5 – 32-10 offered in support of Hebert's motion because these exhibits were not incorporated into the Complaint and are not central to Plaintiff's claims.  (Doc. 36 at 5).  Plaintiff also argues that Hebert is attempting to convert his motion to dismiss into a motion for summary judgment, to which Plaintiff objects and seeks an opportunity to respond and file a cross motion for summary judgment.  (Doc. 36 at 5-6).

The first issue the Court must resolve is whether to consider the exhibits attached to Defendants' motions.  In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) [,] … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015).  There are some exceptions to this standard.  On a motion to dismiss, the court may consider "the complaint, its proper attachments,

6

'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. June 12, 2018) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey*, 540 F.3d at 338) (citations and internal quotation marks omitted)).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c)] motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys a broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 F. App'x. 246, 248 (5th Cir. 2011); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

Here, the Court will not consider or rely upon the job description, (Doc. 12-5), or the recommendation memorandum, (Doc. 12-6), offered by Lombard in support of her motion. These

exhibits fail to meet the Fifth Circuit standard.  These documents are not referenced in Plaintiff's Complaint and are not necessary for this Court to decide the present motion.

However, the Court will consider all of the other exhibits offered by Lombard and Hebert in support of their motions as they are all public records and/or are specifically referenced by Plaintiff in his Complaint.  The Declaration of Terri Cooke, (Doc. 12-7), offered by Lombard, will be considered because it is evidence relevant to Lombard's motion pursuant to Rule 12(b)(1) where matters outside the pleadings such as testimony and affidavits may be considered. *Harmouche v. Consulate General of the State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. June 12, 2018) (citing *Paterson*, 644 F.2d at 523).   As such, the Court will not convert Defendant's Rule 12(b)(6) motion into a motion for summary judgment.

### 1.    Lombard's Motion

#### a.    Lombard's Argument

Lombard seeks dismissal of Plaintiff's Complaint on four grounds: (1) pursuant to Fed. R. Civ. Proc. 12(b)(1) because the Court lacks subject matter jurisdiction over Plaintiff's claim for reinstatement; (2) pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim because Plaintiff has failed to allege any facts establishing that he is eligible, qualified and able to be reinstated to work at the ATC; (3) pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim because Plaintiff's Section 1983 claim has prescribed on the face of the Complaint; and (4) pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim because it is apparent from Plaintiff's Complaint that his claims are barred by *res judicata*.  (Doc. 12-1 at 1).  Lombard's primary basis for seeking dismissal is for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  All other grounds for dismissal are argued in the alternative.

Lombard claims that Plaintiff commenced working as "Agent 4" over the Licensing and Certification Division of the ATC on September 30, 2010. (*Id*. at 3-4 (citing Doc. 12-4 at 7, 20)). Hebert was appointed Commissioner of the ATC on November 28, 2010. (Doc. 12-1 at 4). On January 11, 2011, Hebert "removed" Plaintiff as the Agent 4 over the Licensing and Certification Division and "reassigned" him to work "in the field performing 'liason work'" because Hebert was "disappointed in [Plaintiff's] leadership." (*Id*. (citing Doc. 12-4 at 11-12)). Plaintiff alleges that his protected free speech occurred in March 2011; therefore, Lombard argues that Plaintiff's demotion occurred *before* the "protected free speech." (Doc. 12-1 at 4, n. 4).

Lombard also argues that Plaintiff cannot be reinstated to his position as Agent 4 because Hebert "was not comfortable" with a police officer heading the division, and Hebert returned the position to a civilian employee position.[5] (*Id*.). Significantly, the position was then eliminated and no longer exists. (*Id*.). Finally, Lombard argues that Plaintiff has allowed his certification for the position to lapse and has been living and not working in Texas. Therefore, Plaintiff is no longer qualified for a position that no longer exists and resides out of state. (*Id*. at 4-5).

Lombard admits that Plaintiff prevailed at the jury trial in the state court matter. (*Id*. at 5). However, Lombard explains that the trial judge specifically "struck through" Plaintiff's proposed Judgment which also allowed for his reinstatement to his position. Plaintiff brought a motion for new trial on the issue of reinstatement, which the trial court judge denied. Plaintiff appealed the issue of reinstatement to the appellate court, which denied the reinstatement. Plaintiff sought a rehearing, which was also denied. Plaintiff then filed a writ application with the Louisiana

---

[5] Lombard explains in her memorandum in support of her motion that a civilian had occupied the head of the division for many years prior to Plaintiff. When Brant Thompson was named the Interim Commissioner, Plaintiff allegedly convinced Thompson to change the position to a "police officer" position, which Thompson did. Lombard claims that Plaintiff was the only person interviewed for the head of the division once it was changed, and he was hired. It was not until Hebert was named the Commissioner that the position was returned to its prior description. (Doc. 12-1 at 4).

Supreme Court on the issue of reinstatement, which was also denied.  (*Id.* at 5-7).  Lombard argues that despite "the fact that reinstatement has been rejected" by all levels of the state court, Plaintiff "has again sued the State as his employer (this time through Juana Marine Lombard in her official capacity as the current Commissioner of the ATC)."  (*Id.* at 7).

Based on the foregoing factual allegations, Lombard's first legal argument is that Plaintiff's claims against her are barred by sovereign immunity under the Eleventh Amendment.  (*Id.* at 10). Lombard argues that Plaintiff carefully styled his suit as one seeking reinstatement to his former position because reinstatement is a form of prospective relief which allows a plaintiff to circumvent sovereign immunity and proceed with a suit in federal court against a state official in his/her official capacity.  However, as set forth above, Plaintiff cannot be reinstated to his former position because it no longer exists, his certification to qualify for his former position have expired, and he now lives out of state.  Instead, Lombard claims that what Plaintiff is truly seeking is an award for his back pay, which was denied him in the state court proceedings.  An award for back pay is considered monetary damages, which is barred by sovereign immunity.  (*Id.* at 10-13).

Second, Lombard argues that Plaintiff fails to allege sufficient facts in the Complaint to state a claim for reinstatement.  The only mention of reinstatement in the Complaint is contained in the Prayer for Relief, where Plaintiff demands an order for Lombard to reinstate him to his former position.  Lombard argues that without "any more factual predicate regarding the position" and Plaintiff's "ability to continue to perform in the position, reinstatement is speculative and not plausible on its face".  (*Id.* at 13-14).

Third, Plaintiff's claim under Section 1983 is time-barred.  A one-year statute of limitations applies to Plaintiff's claims.  Lombard argues that the statute of limitations began to run on March 30, 2011, the date of the termination of Plaintiff's employment.  Plaintiff filed suit on October 3,

2019, over eight years later.  Lombard argues that the state court proceeding does not interrupt the tolling of prescription of Plaintiff's claims against Lombard.  In order for the state court suit to interrupt tolling of the federal court suit, Plaintiff must assert the same federal claim in the state court suit as is asserted in the federal court suit.  Lombard argues that no claims under federal law were asserted in the state court proceedings.  Therefore, Plaintiff's claims under Section 1983 can not be interrupted by Plaintiff's claims under state law in the state court proceedings.  (*Id*. at 14-15).

Lastly, Lombard argues that Plaintiff's claim for reinstatement is barred by *res judicata*.  Applying Louisiana state law and the *Burguieres*[6] factors, Lombard claims that it is "apparent that [Plaintiff's] claims are barred by *res judicata* from the face of the Complaint."  (*Id*. at 15-17).   The judgment in the state court proceeding is valid; the judgment in the state court proceeding is final; and the parties in both proceedings are the same.  In the state court proceeding, Plaintiff sued the LDR, as it was the agency governing the ATC and was vicariously liable for Hebert's alleged retaliation.  Here, Plaintiff sued Lombard in her official capacity as the current Commissioner of the ATC, Plaintiff's employer.  Lombard argues that the LDR and Lombard are "one and the same"; the claims in this matter existed at the time final judgment was rendered in the state court proceedings; and the claims asserted in this matter arose out of the same transaction or occurrence that was the subject matter of the state court proceeding, *i.e*., that Plaintiff's termination was motivated by Hebert in retaliation of Plaintiff's speech.  (*Id*. at 17-18).

In summary, Lombard asserts that  Plaintiff "filed this federal lawsuit only after the First Circuit Court of Appeals removed the bulk of his damages award, that is, his lost wages award. [Plaintiff] seeks to recoup those damages in this suit.  However, [Plaintiff] cannot maintain a claim

---

[6] *Burguieres v. Pollingue*, 2002-1385 (La. 2/25/03), 843 So.2d 1049.

for money damages against the State." (*Id*. at 19). Although Plaintiff attempts to revive his claims by seeking reinstatement, "he makes no factual allegations that he is eligible, qualified and able to be reinstated. Indeed, reinstatement is not feasible, the claim is futile, and the Court does not have subject matter jurisdiction over the claims against Lombard for money damages." (*Id*. at 20). Alternatively, Lombard argues that Plaintiff failed to allege facts sufficient to state a claim for reinstatement, his claim has prescribed, and his claim is barred by *res judicata*. (*Id*.).

### b.    Plaintiff's Argument

Plaintiff opposes Lombard's motion and argues: (1) Lombard is not protected by sovereign immunity because Plaintiff is only seeking prospective injunctive relief; (2) Plaintiff pleaded sufficient factual allegations to state a claim for relief for reinstatement; (3) the filing of the state court suit interrupted prescription; and (4) the state court did not have jurisdiction to deny reinstatement; therefore, *res judicata* does not apply. (Doc. 16 at 3).

Regarding Lombard's challenge to subject matter jurisdiction, Plaintiff states that he "does not seek damages against Defendant Lombard. Plaintiff seeks damages against Defendant Hebert in his personal capacity and only prospective, injunctive relief (reinstatement, attorneys' fees, and court costs) against Defendant Lombard." (*Id*. at 6). Therefore, Plaintiff's claim for reinstatement is sufficient to qualify as an exception to sovereign immunity, and Lombard's motion pursuant to Rule 12(b)(1) should be denied. Plaintiff also seeks leave to amend his Complaint "to clarify any ambiguity regarding the relief sought against each defendant." (*Id*. at 7).

Plaintiff also contends that he has sufficiently plead a claim of reinstatement. Plaintiff argues that he "has alleged that he was terminated mere days after submitting written complaints against Defendant Hebert and that there is 'direct evidence in which Troy Hebert essentially admitted that he terminated [Plaintiff's] employment because [Plaintiff] presented the March 10,

2011 complaint to Cynthia Bridges.'" (*Id*. at 8).   Additionally, Plaintiff contends that "all liability issues have already been decided by the state courts.   Thus, he has asserted a claim of First Amendment retaliation that is plausible for purposes of Rule 12(b)(6)." (*Id*.).   Plaintiff argues that he is not required to plead or prove that reinstatement is feasible. (*Id*. at 9).

   Plaintiff claims that his Section 1983 claims have not prescribed "as the filing of the state court lawsuit interrupted prescription on those claims." (*Id*.).   Plaintiff first contends that the LDR is vicariously liable for the actions of its agent, Troy Hebert.   Therefore, Hebert and the LDR are "solidary obligors" and the claims against Hebert were suspended during the time that the state suit was pending. (*Id*. at 10).   Also, because official capacity suits, such as the claims brought against Lombard, are "simply another way of pleading an action against the specific entity of which the officer is an agent," the suit against Lombard "is in effect a suit against the State of Louisiana." (*Id*.).   Therefore, the claims against Lombard are claims against the LDR which is solidarily liable with Hebert, which claims were suspended during the time the state suit was pending. (*Id*. at 10-11).

   Plaintiff admits that his "cause of action in the case *sub judice* is the same as in his state suit," therefore the filing of the state suit interrupted prescription on his claims.   Plaintiff argues that the facts "alleged in the state suit are the same as those alleged herein" with the only difference being that "the state suit alleged violations of his right to free speech" under the Louisiana Constitution, whereas "the present suit alleges violations of those same rights under" the United States Constitution. (*Id*. at 12).   Plaintiff then goes a step further and admits that in the "fact pleading state" of Louisiana, Plaintiff's pleading of facts sufficient to state a cause of action under the Louisiana Constitution also asserted a cause of action under the United States Constitution.   In

fact, Plaintiff contends that Defendant could have chosen to remove the state court case to federal court.  (*Id*.).

Despite the foregoing admissions, Plaintiff maintains that his claim of reinstatement is not barred by *res judicata*.  Plaintiff argues that the trial court's denial of his claim of reinstatement did not have "preclusive effect" because the First Circuit later held that the trial court did not have jurisdiction over Plaintiff's claim for reinstatement.  (*Id*. at 14).  Further, *res judicata* is not procedurally proper on a motion to dismiss and is better presented on a motion for summary judgment.  (*Id*.).

### c.    Lombard's Reply

Lombard highlights that Plaintiff admits that Lombard is an "arm of the State" and has not waived sovereign immunity, and, instead, attempts to "fit within the narrow" exception by arguing that his claim is solely for reinstatement.  (Doc. 25 at 1).  However, reinstatement is impossible, and Plaintiff has not come forward with any evidence proving otherwise.  (*Id*.).  Since a "factual attack" has been made to Plaintiff's Complaint, Plaintiff cannot simply rely upon his factual allegations.  Plaintiff must submit evidence to prove that the Court has jurisdiction over this matter. (*Id*. at 2 (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  Plaintiff has not done this, and Lombard contends that the Court "should treat the evidence submitted by Lombard as unrebutted and established."  (*Id*. (citing *Rollins v. Systems Integration, Inc*., 2006 WL 3486781, at *3 (W.D. Tex. Dec. 4, 2006)).  There is no evidence supporting that Plaintiff can prove a plausible set of facts establishing that he can be reinstated, which is necessary to establish subject matter jurisdiction.  Lombard urges the Court to dismiss Plaintiff's claims for reinstatement against Lombard based on a lack of subject matter jurisdiction.  (*Id*. at 3 (citing *Davis v. United States*,

597 F.3d 646, 649 (5th Cir. 2009); *Cell Science Systems Corp. v. Louisiana Health Service and Indemnity Co.*, 2018 WL 3978361, at *4 (M.D. La. Aug. 20, 2018)).

All parties agree that a one-year prescriptive period applies to Plaintiff's Section 1983 claims and that tolling commenced on March 30, 2011. The issue is whether Plaintiff's state court suit interrupted the tolling of prescription as to Plaintiff's federal court suit. Lombard directs the Court to *Cook v. Lamont*, No. 11-00358, 2013 WL 325557, at *4 (M.D. La. Jan. 28, 2013), where this Court held that interruption of prescription only occurs when the state court lawsuit asserts the same federal claim that is subsequently asserted in the federal court suit. Prescription is not interrupted when the state court suit does not allege the same federal constitutional claim as is pled in the later-filed federal court suit. (Doc. 25 at 4). Lombard also highlights this Court's ruling in *Ford v. Stone*, 599 F.Supp. 693, 695-96 (M.D. La. 1984), *aff'd*, 774 F.2d 1158 (5th Cir. 1985), where Ford argued that the facts in the state court suit were the same as those in the federal court suit and, therefore, the state court suit interrupted the tolling of prescription as to the federal court suit. Significantly, Ford's allegations in the state court suit were for violations of civil rights under the Louisiana Constitution, and the claims in the federal court suit were based upon the United States Constitution – just as Kling is arguing here. This Court disagreed with Ford on this argument and clearly stated that prescription would only be interrupted if Ford had alleged a federal cause of action in the state court suit, which Ford did not do. (Doc. 25 at 5-6 (*see also Vincent v. Munster*, 17-1129, 2018 WL 1875851, at *2 (E.D. La. Apr. 18, 2018)). Lombard concludes by arguing, "Kling could have asserted his federal claims in the same action as his prior state claim or he could have asserted them in a separate federal suit. He chose neither option and the consequence is that his federal [Section] 1983 claims are time barred and must be dismissed." (*Id*. at 6).

Lombard characterizes Plaintiff's arguments with respect to *res judicata* as an "unabashed attempt to 'have his cake and eat it too.'" (*Id.*). Plaintiff clearly stated in his opposition that he asserted the same cause of action against the same party. Yet, as Lombard argues, Plaintiff "seeks to avoid both prescription and *res judicata* to manufacture an additional bite at the apple." (*Id.*). Lombard expresses astonishment that Plaintiff relies upon the jury's verdict in the state court suit in an attempt to establish the facts in this matter, yet Plaintiff denies the applicability of *res judicata*. "Kling cannot have it both ways." (*Id.* at 7).

### 2. Hebert's Motion

#### a. Hebert's Argument

Hebert seeks dismissal of Plaintiff's Complaint on three grounds: (1) for failure to state a claim because Plaintiff's Section 1983 claim against Hebert has prescribed on the face of the Complaint; (2) because Plaintiff's allegation that he was a probationary employee defeats his Section 1983 due process claim as a matter of law; and (3) because Plaintiff has not met his burden of pleading facts sufficient to deny Hebert qualified immunity from suit. (Doc. 32-1 at 1). Hebert's primary basis for seeking dismissal is prescription. All other grounds for dismissal are argued in the alternative.

The statute of limitations applicable to Plaintiff's claims against Hebert is one year. Prescription commenced on March 30, 2011, the date of Plaintiff's termination. Plaintiff filed suit on October 3, 2019, over eight years later. Therefore, Plaintiff's claims have prescribed on the face of the Complaint. (*Id.* at 4).

Hebert then acknowledges Plaintiff's argument that the LDR and Hebert are "solidarily liable", therefore, the filing of the state court action against the LDR interrupted prescription. However, Hebert argues that this is insufficient to defeat prescription because Plaintiff did not

allege the same federal claims in his state court suit as he does here.  Thus, the state court suit did

not interrupt the tolling of prescription of this matter.  (*Id*.).  Plaintiff's state court lawsuit did not

assert any federal claims and did not assert a claim under Section 1983.  Plaintiff could have

asserted his Section 1983 claims against Hebert in the state court lawsuit, but he did not do so.

Therefore, prescription was not interrupted, and Plaintiff's claims under Section 1983 against

Hebert are time-barred.  (*Id*. at 4-6 (citing *Cook v. Lamont*, No. 11-00358, 2013 WL 325557 (M.D.

La. Jan. 28, 2013); *Ford v. Stone*, 599 F.Supp. 693 (M.D. La. 1984), *aff'd*, 774 F.2d 1158 (5th Cir.

1985); *Vincent v. Munster*, No. 17-1129, 2018 WL 1875851 (E.D. La. Apr. 18, 2018); *Giles v.

Ackal*, No. 11-1774, 2012 WL 1458117 (W.D. La. Mar. 27, 2012)).

Second, Hebert argues that Plaintiff fails to state a claim of a due process violation under

Section 1983 because Plaintiff "must first show he had a legally cognizable property interest in his

continued employment."  Probationary public employees, which Plaintiff alleges he was, do not

have a property interest in their continued employment as required to bring due process claims.

Therefore, Hebert argues that this claim fails on the face of the Complaint.  (Doc. 32-1 at 6).

Finally, Hebert argues that Plaintiff's claims against him are barred by qualified immunity.

When the doctrine of qualified immunity is asserted, the plaintiff must plead facts demonstrating

liability, specifically that the official violated his constitutional right and that the right was clearly

established at the time of the challenged conduct.  (*Id*. at 7).  Hebert claims that the "issue here is

whether [Plaintiff's] speech, particularly his speech and participation in the March 10, 2011,

complaint letter, was a "clearly established right".  (*Id*.).  Hebert acknowledges that Plaintiff

generally alleges that the right not to be terminated in retaliation for exercising one's right to

freedom of speech is "clearly established", however Hebert argues that Plaintiff's allegation fails

for the following reasons: (1) the allegation must be more particularized and tied to the context in

which the employee engaged in the speech at issue; (2) termination decisions by government officials can rarely be found to have violated "clearly established" rights; (3) the state court matter found that Plaintiff's complaints of Hebert did not constitute a "matter of public concern", which demonstrates that Hebert could not have known that Plaintiff was exercising a "clearly established" right; (4) Plaintiff conceded that his later letters (dated March 16, 22, and 25, 2011) did not constitute matters of public concern at the state court level; and (5) at the time of the termination of employment, there was no case law "clearly establishing" that Plaintiff engaged in protected speech. (*Id*. at 9-10).

Hebert also argues that Plaintiff's speech was not on a matter of public concern because Plaintiff was speaking as an employee and not as a citizen. Therefore, the speech was not constitutionally protected. Hebert further argues that Plaintiff's speech does not qualify as "mixed speech" under the law and is not protected by the First Amendment. (*Id*. at 11-12). The complaint letters at issue from March 2011 do not qualify as "matters of public concern" based on the findings and concessions made in the state court proceeding. (*Id*. at 12-18).

### b.    Plaintiff's Argument

In opposition to Hebert's motion seeking dismissal based on prescription, Plaintiff's argument is almost identical to Plaintiff's argument in opposition to Lombard's motion regarding prescription. Plaintiff claims that his Section 1983 claims have not prescribed "as the filing of the state court lawsuit interrupted prescription on those claims." (Doc. 36 at 6). Plaintiff first contends that the LDR is vicariously liable for the actions of its agent, Troy Hebert. Therefore, Hebert and the LDR are "solidary obligors", and the claims against Hebert were suspended during the time that the state suit was pending. (*Id*. at 6-7).

18

Plaintiff admits that his "cause of action in the case *sub judice* is the same as in his state suit," therefore the filing of the state suit interrupted prescription on his claims. Plaintiff argues that the facts "alleged in the state suit are the same as those alleged herein" with the only difference being that "the state suit alleged violations of his right to free speech" under the Louisiana Constitution, whereas "the present suit alleges violations of those same rights under" the United States Constitution. (*Id*. at 7-8). Plaintiff then goes a step further and admits that in the "fact pleading state" of Louisiana, Plaintiff's pleading of facts sufficient to state a cause of action under the Louisiana Constitution also asserted a cause of action under the United States Constitution. In fact, Plaintiff contends that Defendant could have chosen to remove the state court case to federal court. (*Id*. at 8-9).

Plaintiff concedes that he is not alleging a violation of due process rights. (*Id*. at 12).

A constitutional violation of Plaintiff's freedom of speech has been alleged. Plaintiff contends that the protected speech was on a matter of public concern because it concerned misconduct within a department of the State of Louisiana. Plaintiff further argues that at the time of Plaintiff's termination, it was clearly established that the state could not terminate an employee for submitting a complaint of misconduct and race discrimination. (*Id*. at 12-17). Therefore, qualified immunity does not safeguard Hebert from Plaintiff's claims.

Additionally, Plaintiff explains that the "speech" at issue, the letters of complaint, were the allegations of Plaintiff and not based on the speech of the other employees who joined in the letters of complaint. (*Id*. at 17-21). Regardless, Plaintiff contends that "Hebert's actions were nonetheless illegal and objectively unreasonable." (*Id*. at 21).

c.      **Hebert's Reply**

Just as with the briefing on Lombard's motion, all parties agree that a one-year prescriptive period applies to Plaintiff's Section 1983 claims and that tolling commenced on March 30, 2011. The issue is whether Plaintiff's state court suit interrupted the tolling of prescription as to Plaintiff's federal court suit.  Hebert directs the Court to *Cook*, 2013 WL 325557, at *4, where this Court held that interruption of prescription only occurs when the state court lawsuit asserts the same federal claim that is subsequently asserted in the federal court suit.  Prescription is not interrupted when the state court suit does not allege the same federal constitutional claim as is pled in the later-filed federal court suit.  (Doc. 38 at 1).  Plaintiff's response to *Cook* is that it was incorrectly decided and should be disregarded.  Because *Cook* does not stand alone in its findings and follows a long line of other cases, Hebert takes issue with Plaintiff's opposition.  (*Id*.).

Hebert also highlights this Court's ruling in *Ford v. Stone*, 599 F.Supp. at 695-96, where the Court found that prescription is not interrupted as to a federal constitutional claim if the plaintiff failed to plead that claim in a prior state court suit.   (Doc. 38 at 3 (s*ee also Vincent v. Munster*, 17-1129, 2018 WL 1875851, at *2; *Cook*, 2013 WL 325557, at *4; *Giles*, 2012 WL 1458117, at *2-3).

Hebert highlights that Plaintiff "does not cite any [applicable] cases addressing the issue presented in Hebert's motion, *i.e*., whether the prescriptive period applicable to his [Section] 1983 claim against Hebert is interrupted by his filing a prior lawsuit in state court that did not assert any federal constitutional claims."  (*Id*. at 3).  Hebert characterizes Plaintiff's filings as trying to get a "second bite at the apple" when Plaintiff chose not to bring certain claims in his first suit in state court.  (*Id*.).  Hebert concludes its argument on the issue of prescription as follows:

> [Plaintiff's] argument is, essentially, he asserted a federal cause of action by
> pleading the same underlying facts in his prior state court suit.  Obviously[,] he did

not.  As reflected in the state court pleadings (…Docs. 32-4, 32-6, 32-8, 32-9 and 32-10), [Plaintiff] never pled, referenced, or in any way indicated in his prior state court suit that he was asserting or intending to assert any federal claims.  [Plaintiff] certainly did not request a jury instruction regarding federal claims and the federal claim was not on the verdict form.  He did not say, 'What about my federal claims?  They have been in my pleadings all along!'  [Plaintiff's] argument is therefore not only legally meritless under the cases Hebert has cited, [but] it is [also] disingenuous and factually unsupported.  What is clear from the face of the complaint is that [Plaintiff] is now only asserting the federal claims in an attempt to recoup damages that the First Circuit reversed.

(Doc. 38 at 5).

Maintaining that Hebert enjoys qualified immunity from Plaintiff's Section 1983 claims, Hebert replies: (1) Plaintiff ignores Hebert's argument that since the trial court judge held that the first complaint letter did not constitute  speech on a matter of public concern, then Hebert could not have known that he was violating a "clearly established" constitutional right, (*id*.); (2) Plaintiff did not cite to any caselaw supporting that Hebert violated a "clearly established" right, (*id*. at 6); (3) "Although the First Circuit found [Plaintiff] engaged in speech on matters of public concern, the analysis it employed reveals there were no cases preceding [Plaintiff's] termination that bore any factual resemblance to this case," (*id*. at 7); (4) Plaintiff's reliance on *Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412 (2016), is misplaced, does not show "clearly established law", and is distinguishable, (*id*.);  and (5) Plaintiff's collateral estoppel argument is irrelevant because Hebert is arguing that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because he did not plead facts sufficient to show that Hebert violated a law that was "clearly established" at the time of termination – as opposed to arguing that Plaintiff's claims of Hebert's potential liability must be "relitigated" on this motion, (*id*. at 8-9).

## II.     Motion to Dismiss Standard

### A.      Rule 12(b)(1) Standard

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)....

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.    Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained, "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."   135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.  'Asking for [such] plausible grounds to infer

22

[the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].'

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the 'reasonable inference' the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a 'reasonable expectation' that 'discovery will reveal relevant evidence of each element of the claim.' *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" "has been asserted". *Id.* at 503.

**III.    Discussion**

    **A.    Lombard's Motion - Subject Matter Jurisdiction over Plaintiff's Claim for Reinstatement**

Plaintiff admits that his only claim against Lombard is for reinstatement.  (Doc. 16 at 6). Both Plaintiff and Lombard agree that Lombard, in her official capacity, stands as an arm of the State of Louisiana; therefore, claims against Lombard in her official capacity are subject to sovereign immunity under the Eleventh Amendment.  (*Id.*; *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-103 (1984)).  The Eleventh Amendment is a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state.  *See Babin v. Breaux*, No. 10-368, 2013 WL 12122409, at *5 (M.D. La. Mar. 19, 2013).  Both parties also agree that an exception to sovereign immunity exists, the *Ex Parte Young*[7] exception, when a suit is brought against a state actor in her official capacity and is one for prospective relief only, such as reinstatement.  (Doc. 16 at 6; Doc. 12-1 at 11).  Agreement between Plaintiff and Lombard ends here.

Lombard argues that jurisdiction over Plaintiff's claim for reinstatement cannot be gained where reinstatement is implausible.  If Plaintiff's only claim is for reinstatement, which is the case here, and reinstatement is impossible, then Plaintiff has not pled a plausible claim for prospective relief to qualify for the *Ex Parte Young* exception.  (Doc. 12-1 at 11; *see also Babin*, 2013 WL 12122409, at *5 (citing *Edelman v. Jordan*, 414 U.S. 651, 663 (1974) ("When the action is in essence one for the recovery of money from the state is the real, substantial party in interest and is entitled to invoke sovereign immunity from suit even though individual officials are nominal defendants.")).  In other words, the exception to sovereign immunity, affording jurisdiction, cannot attach when the prospective relief for which Plaintiff prays is an impossibility.  Lombard moves the Court pursuant to Rule 12(b)(1) to find that the Court does not have subject matter jurisdiction

---

[7] *Ex Parte Young*, 209 U.S. 123 (1908).

over Plaintiff's claim of reinstatement.  To do so would be to manufacture jurisdiction where it does not otherwise exist.

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, as Lombard has done here, the Court will consider the Rule 12(b)(1) jurisdictional challenge before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche*, 313 F.Supp.3d at 819 (citing *Paterson*, 644 F.2d at 523). In considering a "facial attack," the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient[,] the complaint stands." *Paterson*, 644 F.2d at 523.

In contrast, "[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

Here, Lombard does not just challenge the sufficiency of the pleading but claims that Plaintiff has failed to show a plausible claim of reinstatement such that subject matter jurisdiction attaches and sovereign immunity is circumvented.  In challenging this, Lombard relies on matters outside the pleadings, so the Court will treat this motion as a 12(b)(l) factual attack on subject

matter jurisdiction. *Paterson*, 644 F.2d at 523; *see also Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981). As such, the Court weighs the evidence without presuming the truthfulness of Plaintiff's allegations or attempting to view the evidence in the light most favorable to Plaintiff.

The Court finds that Lombard should prevail in the instant motion pursuant to Rule 12(b)(1). Because Plaintiff did not plead and prove a plausible claim of reinstatement, he failed to show that his claim against Lombard qualified for the exception to the rule of sovereign immunity. Therefore, he failed to establish subject matter jurisdiction over his claim against Lombard. Without a plausible claim of reinstatement, the Court lacks subject matter jurisdiction over his claim against Lombard, and it must be dismissed without prejudice.

The Complaint alleges that the First Circuit Court of Appeal denied Plaintiff's claim for reinstatement based on its conclusion that the trial court lacked subject matter jurisdiction to adjudicate the claim, (Doc. 1 at 5); however, Lombard cites to evidence that indicates otherwise. Plaintiff never made a showing at the trial court level that he could be reinstated to his former position or that he was entitled to reinstatement to his former position. Lombard cites to the orders in the public record where the trial court denied Plaintiff's claim of reinstatement. (Doc. 12-1 at 5-7 (citing Docs. 12-8, 12-9, 12-10, 12-11)). The trial court's denial of Plaintiff's motion for reinstatement was based on the merits, not on whether the Civil Service Commission had jurisdiction to reinstate Plaintiff. (*Id*.). Lombard further evidenced that the appellate court upheld this finding, and the Louisiana Supreme Court denied Plaintiff's writ application on this issue. (Docs. 12-12, 12-13, 12-16, 12-19).

More to the heart of the issue, Lombard produced evidence that the position no longer exists. There is no position to which Plaintiff could be reinstated. (Doc. 12-4, 12-7). Even if the position still existed, Plaintiff did not maintain his qualifications and necessary certifications to be

reinstated to the position.  (Doc. 12-4).  He is no longer qualified for the now non-existent position.  Further, Plaintiff lives in Texas, and Plaintiff has not addressed any desire or plan to return to the area in order to be able to report to work.  (*Id*.).  Simply put, reinstatement is an utter impossibility.  Significantly, Plaintiff has not offered *any* evidence that the position exists, that Plaintiff remains qualified and certified to be re-appointed to his prior position, or that Plaintiff is able and willing to re-assume this position or any equivalent position.  Thus, Plaintiff has not met his burden of showing that his claim for reinstatement is plausible and properly before this Court.

Plaintiff makes a feeble attempt to survive Lombard's Rule 12(b)(1) challenge by arguing that he does not have to prove his case on a motion to dismiss and that discovery must be allowed first.  (Doc. 16 at 9).  Plaintiff also makes a plea to amend his Complaint to "clarify any ambiguity regarding the relief sought against each defendant."  (Doc. 16 at 7).  Unfortunately, proving and maintaining jurisdiction is, in fact, Plaintiff's burden. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). And, in response to a factual attack on his Complaint, it was incumbent upon Plaintiff to meet Lombard's offered evidence with Plaintiff's own evidence of a plausible claim for reinstatement.  Plaintiff simply failed to do so to his detriment.  Lombard correctly cites to *Cell Science* where Plaintiff's counsel advanced this same strategy.  There, this Court stated:

> [Cell Science] claims that, on a motion to dismiss, "a plaintiff is simply not required to put on such evidence at the pleading stage." While this is generally true, as set forth above, once a factual attack has been made on a complaint challenging subject matter jurisdiction, a plaintiff has the burden of proving, by a preponderance of the evidence, that federal jurisdiction does in fact exist. [Cell Science] alleged the plan participants/beneficiaries at issue had assigned their rights to payment; however, once this fact was challenged, [Cell Science] has the burden to submit evidence of the alleged assignments of rights to establish its standing and this Court's jurisdiction. Indeed, although [Cell Science] was granted leave to amend its *Complaint*, and file supplemental briefs, with full knowledge of the factual attack asserted in [Defendant]'s motion, [Cell Science] failed to present any evidentiary support for its assertion of standing. This repeated failure undermines the allegation

that [Cell Science] has obtained a valid assignment of the rights it asserts herein. Further, [Cell Science]'s repeated protestations that it does not have to "prove its case" at this procedural posture is simply contrary to controlling law because its standing has been factually attacked. [Defendant] is entitled to dismissal on this basis alone.

*Cell Science,* 2018 WL 3978361, at *4.  The same result befalls Plaintiff's claim in this matter.

In sum, because the undisputed evidence in the record indicates that reinstatement is impossible, Plaintiff's claim is implausible.  Since Plaintiff's prospective relief sought is implausible, then his claim does not qualify for the *Ex Parte Young* exception to the rule of sovereign immunity.  Therefore, this Court is without subject matter jurisdiction under the Eleventh Amendment to consider Plaintiff's claim against Lombard. *Davis v. United States*, 597 F.3d 646 (5th Cir. 2009). Consequently, Plaintiff's claim against Lombard in her official capacity under Section 1983 must be dismissed.

Having found that this Court does not have jurisdiction over Plaintiff's claim against Lombard, it is not necessary for the Court to address Lombard's additional arguments for dismissal pursuant to Rule 12(b)(6).  Therefore, the Court now turns to Hebert's motion.

### B.      Hebert's Motion - Timeliness of Plaintiff's Section 1983 Claims

Plaintiff has asserted a claim of retaliation under Section 1983 against Hebert in his individual capacity.  Plaintiff's Complaint avers that Plaintiff made complaints about Hebert to the LDR by letters dated March of 2011, and Plaintiff claims that Defendants retaliated against him for making these complaints by terminating his employment.

The prescriptive period for a claim under Section 1983 in Louisiana is one year. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998).  While the limitations period is determined by state law, the accrual of a Section 1983 claim is a matter of federal law. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). "Under federal law, the limitations period begins to run the moment the

plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks omitted).

All parties agree that Plaintiff was terminated on March 30, 2011, and that the statute of limitations began to toll on that date. Suit was filed on October 3, 2019. All parties agree that a one-year statute of limitations applies to Plaintiff's claims, and that suit was filed greater than one year after Plaintiff was terminated. However, Plaintiff argues that his state court proceeding, regarding the same factual allegations as pled here, interrupted the tolling of prescription. Hebert disagrees and argues that Plaintiff could have asserted a claim under Section 1983 in the state court proceeding, but he did not. In fact, Plaintiff did not assert any claims under federal law in the state court proceedings. Therefore, prescription was not interrupted by the state court proceeding, which has been adjudicated by jury trial and has exhausted the appeal process. The issue before this Court is whether Plaintiff's state court suit interrupted the tolling of prescription of his federal court suit, thereby rendering his claims under Section 1983 timely.

Plaintiff points the Court to La. Civ. Code art. 3462, claiming that his prior filing of an action in state court, based upon the same core facts as the present action, interrupted prescription as against his federal cause of action. But Plaintiff fails to consider La. Civ. Code art. 3463, which states that if the plaintiff "abandons", "or fails to prosecute the suit at the trial", the interruption of prescription is considered "never to have occurred." As the jurisprudence makes clear, prescription cannot be interrupted as to federal claims Plaintiff could have, but did not pursue arising from the same set of facts.

Federal jurisdiction of Section 1983 claims is concurrent with that of state courts, rather than exclusively federal. State courts may hear and decide claims raised under the civil rights

statutes. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481. In the present case, Plaintiff contends that his filing of a lawsuit in state court arising out of the same basic facts as this suit interrupted prescription. The state court suit was filed in May of 2011. Although assertion of federal claims in the state action would clearly have constituted an interruption of prescription, neither the original nor the amended state court petitions allege any federal cause of action.[8]   No reference was made in either petition to federal statutory or constitutional rights.   The Louisiana Constitution protects the citizens of Louisiana against retaliation for the plaintiff's right of freedom of expression; allegations of such retaliation, therefore, are not indicia of the assertion of a federal cause of action.

Plaintiff's state court suit was tried, and the jury returned a verdict favoring Plaintiff. Portions of this verdict were appealed to the First Circuit Court of Appeal.  The First Circuit reversed the award of lost wages.  Only then did Plaintiff file suit in this Court.

Plaintiff's federal action differs from the previous state action in that the LDR, named as a defendant in the state suit, is not directly named in the federal suit; instead, Plaintiff named Lombard in her official capacity and Hebert in his individual capacity.  Also, the federal complaint specifically asserts federal claims. Plaintiff could have asserted all of his claims in state court, or in this Court, invoking pendent jurisdiction for subject matter jurisdiction over those based in state law. He chose instead to file suit in state court upon state law claims only.

---

[8] In his original petition, Plaintiff alleges, "The defendant's termination of the plaintiff was in retaliation for the exercise of the plaintiff's expressional rights under Article 1, Section 7 of the Louisiana State Constitution."  (Doc. 12-2 at 2).  The same sentence is found in Plaintiff's amending petition.  (Doc. 12-3 at 6).  Plaintiff makes no mention of federal claims, the United States Constitution, freedom of speech, the First Amendment, or Section 1983 in either state court petition.

These facts show that not only Hebert, but also Lombard, received no formal notice of Plaintiff's federal claims until well after passage of the one-year prescriptive period. To permit Plaintiff to now assert those claims would subvert the purpose of limitations statutes:

> The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely and to protect him from state claims and from loss or non-preservation of relevant proof. They are designed to protect him against lack or notification of a *formal claim within the prescriptive period*...

*Norris v. Bell Helicopter-Textron, Inc.,* 712 F.2d 171, 173 (5th Cir.1983), *citing* Tate, *Amendment of Pleadings in Louisiana*, 43 Tulane L.Rev. 211 (1969) (emphasis added).

This issue is not a novel one for this Court, as both Lombard and Hebert have set forth in their respective memoranda.  First, in *Ford v. Stone*, 599 F.Supp. 693 (M.D. La. Dec. 6, 1984), a former university faculty member filed suit challenging his discharge due to public statements made during the course of his duties. The defendants filed a motion for summary judgment on the issue of prescription. This Court held that the prior filing of a suit in state court in which the faculty member did not assert his federal rights under Section 1983 did not interrupt the running of the prescriptive period on his action; therefore, the action was time-barred where it was not brought within one year of its accrual.

Decades later, relying upon *Ford*, this Court reached the same conclusion in *Allen v. Holden*, No. 10-0753, 2012 WL 3902401, at *3 (M.D. La. Aug. 15, 2012).  There, the plaintiff argued that he had pending before the state district court a timely-filed lawsuit against the same defendants relative to the same cause of action, and that the state court lawsuit interrupted the pertinent limitations period. However, this Court found:

> [W]hile the plaintiff is correct that a state court lawsuit relative to the same defendants and the same cause of action may interrupt the one-year limitations period, a prerequisite for such interruption relative to a federal claim arising under § 1983 is that the state court lawsuit adequately assert the same federal claim.  *See*

31

*Ford v. Stone,* 599 F.Supp. 693 (M.D.La.1984), aff'd, 774 F.2d 1158 (5th Cir.1985) (holding that the plaintiff's state court petition failed to sufficiently assert federal claims so as to interrupt the limitations period). *See also Giles v. Ackal,* 2012 WL 1458117 (W.D.La., March 27, 2012) (recognizing that a state court lawsuit interrupts the limitation period only "as to the causes of action filed in the earlier suit"); *Kaufman v. Singer,* 1999 WL 253522 (E.D. La., April 29, 1999) (holding that "[b]ecause no federal claims were raised in plaintiffs' state court lawsuit, prescription on such claims was not interrupted by the filing of that suit"); *Joseph v. City of New Orleans,* 1996 WL 293519 (E.D.La., May 29, 1996) (same); *Brossette v. City of Baton Rouge,* 837 F.Supp. 759 (M.D.La.1993) (same). (*Id.*).

This Court reached the same conclusion in *Cook v. Lamont*, No. 11-0358, 2013 WL 325557, at *4 (M.D. La. Jan. 28, 2013).  *See also, Turner v. Cain*, No. 12-598, 2018 WL 8576625, at *7 (M.D. La. Sept. 17, 2018).

Plaintiff has not directed the Court to any caselaw within the Fifth Circuit on this issue that reaches a different result.

Here, Plaintiff was terminated on March 30, 2011, and filed suit in this Court on October 3, 2019.  Applying the one-year prescriptive period from Plaintiff's termination date and having found that Plaintiff's state court suit did not interrupt the tolling of prescription, it is readily apparent that Plaintiff's suit is untimely.  Therefore, Hebert's motion with regard to the timeliness of Plaintiff's claims under Section 1983 is granted.

Finally, having found that Plaintiff's suit is untimely, it is not necessary for the Court to address Hebert's remaining arguments.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Juana Marine-Lombard's *Motion to Dismiss* (Doc. 12) pursuant to Rule 12(b)(1) is **GRANTED.  IT IS FURTHER ORDERED** that Plaintiff's claim against Lombard is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS ORDERED** that Juana Marine-Lombard's Motion to Dismiss (Doc. 12) pursuant to Rule 12(b)(6) is **DENIED AS MOOT**.

**IT IS ORDERED** that Troy Hebert's *Motion to Dismiss* (Doc. 32) pursuant to Rule 12(b)(6) is **GRANTED**.   Plaintiff's claims have prescribed and are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on August 11, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**